UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

HECTOR AND CARMEN MARTINEZ,

      Plaintiffs,

v.                                                                                                                                    Case No. 14-C-2

VERICREST FINANCIAL A/K/A CALIBER HOME LOANS, INC.,

      Defendant.

---

**DECISION AND ORDER**

---

Plaintiffs Hector and Carmen Martinez brought this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, ("FCRA"). The Defendant has moved for summary judgment on the ground that the Plaintiff has not sustained any actual damages as a result of a credit reporting error. For the reasons given below, the motion will be denied.

**I. Background**

For roughly three years, the Plaintiffs lived in a Green Bay apartment. They had previously sought to buy a house, but errors on Hector Martinez's credit report prevented them from getting a loan. After those errors were finally cleared up, Plaintiffs again tried to purchase a home and, on October 9, 2013, made an offer for a house located on Chantal Drive in Green Bay. This time, however, a credit report search revealed errors on *Carmen* Martinez's credit report, including a nonexistent mortgage with Defendant Caliber Home Loans.

Throughout October and November 2013, Plaintiffs tried to clean up their credit reports, and on November 19 they submitted an offer on the same house, with a closing scheduled the same

month. An unexplained delay, possibly due to the Thanksgiving holiday, pushed the closing back to December. (ECF No. 51-2 at 81.) After that, the sellers apparently got "fed up" with the continued delays and indicated they would sell the house to someone else, or possibly rent it. (*Id.* at 82.) Even so, by February 2014 the errors on the credit reports were removed, and the Plaintiffs filled out another loan application. Plans were again underway to purchase the Chantal Drive house, for roughly $130,000, but when the sellers received another offer, they backed out of the sale.[1]

Plaintiffs allege that they lost the house due to the delays caused by the flawed credit report. The loss of their preferred house allegedly damaged them in several ways. First, they assert that they had to buy a different house at a much higher cost of $161,000. Second, the distance to their son's school was much greater, and they did not want to move him to the neighborhood school, which was closer. This resulted in increased transportation costs. Finally, they assert that Mrs. Martinez, who suffers from depression, sustained emotional distress as a result of the Defendant's actions.

**II. Analysis**

Summary judgment is proper if the moving party can show there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The FCRA provides that negligent failure to comply with reporting requirements makes the defendant liable for "any actual damages sustained by the consumer as a result of the failure." 15 U.S.C. § 1681o(a)(1). The Defendant has made a settlement offer equal to the statutory damages Plaintiffs could recover, and thus if there are no "actual damages," there is nothing left to this case.

---

[1]The actual prices are unclear. The proposed facts suggest that the loan amount was identical to the purchase price, which would mean there was no down payment.

**A. Increased Borrowing Costs**

At the outset, I note that it is unclear, even at this stage of the proceedings, what Plaintiffs actually seek to recover. Plaintiffs appear not only to seek the increased borrowing costs due to a small rise in interest rates during the delay, but also the cost of the additional money they paid to buy a larger house.

According to the Defendant's proposed factual findings, the original loan for the Chantal house was to be in the range of 3.75 to 3.99%, (ECF No. 50, ¶ 34), and Plaintiff believes the rates were even slightly lower. (ECF No. 61, ¶ 19.) The loan for the house they ultimately purchased was obtained at a rate of 4.00%. (ECF No. 50, ¶ 56.) I conclude that an increase in interest rates due to delays directly caused by a credit reporting error could be recovered as damages in an FCRA case, i.e., that the increased borrowing costs are "actual damages sustained by the consumer as a result of the failure." 15 U.S.C. § 1681o(a)(1). If Plaintiffs could prove they would otherwise have qualified for the loan and would have closed on the sale, they could be entitled to receive the difference, over the life of the loan, between the original rate they would have obtained and the rate they ultimately paid, based on the same loan amount. For example, on a $130,000 loan, the interest would be $4,550 per year at 3.5% but would rise to $5,200 at a rate of 4%. If the need to pay the higher amount is due to delays caused by the Defendant, the Defendant could be liable for those damages. *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1174 (9th Cir. 2009) (increased interest rates are properly considered damages).

The Defendant argues that several weeks passed between the time when it fixed the credit report and the Chantal house owners' decision to sell the house to someone else. In short, it believes the Plaintiffs could have made an offer to purchase the house as soon as their report was

fixed (mid-February), rather than waiting until March. Had they done so, they likely would have had their offer accepted before any other buyers surfaced. Since that could have occurred, the Plaintiffs cannot lay the blame for losing the house at the Defendant's door.

Although that is a plausible argument, it relies too heavily on disputed factual issues. Causation is an inherently fact-intensive question. A jury could conclude that the loss of the house (and thus the lower interest rate) was indeed due mostly to the Plaintiffs' own unspecified delays, but it could also conclude that the erroneous credit report played a significant role as well. The FCRA does not require the defendant's conduct to be the *sole* cause of losses, but merely an "actual" cause. *Philbin v. Trans Union Corp.,* 101 F.3d 957, 969 (3d Cir. 1996) ("[c]ourts have recognized that where a decision-making process implicates a wide range of considerations, all of which factor into the ultimate decision, it is inappropriate to saddle a plaintiff with the burden of proving that one of those factors was the cause of the decision." (emphasis in original)). Here, although a jury could agree with the Defendant, it is also possible that Plaintiffs could show that the delays caused by the Defendant's conduct were a substantial factor in the need to incur higher interest rates.

The Plaintiffs' more unusual argument appears to be a suggestion that the Defendant should also pay the Plaintiffs for the additional money they spent to buy a more expensive house. As the Defendant notes, however, if such were the measure of damages, then a plaintiff could simply buy a mansion and send the bill to the defendant on the grounds that it was the defendant's fault that he missed out on the much cheaper house. Obviously the law, with its general duty to mitigate losses, does not envision granting blank checks to FCRA victims to go out and spend the money of credit reporting agencies. Instead, a plaintiff's own decision to purchase a larger, more expensive house

4

breaks the causal link between the defendant's conduct and the plaintiff's damages. "Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages.'" *Crabill v. Trans Union, L.L.C.,* 259 F.3d 662, 664 (7th Cir.2001) (citations omitted).

In addition to the causation problem, there is also a damages problem. In choosing to buy a more expensive, larger house, the plaintiffs were not "damaged" at all. In an arm's length free market system, we must presume they received additional value equal to the extra $31,000 they paid. The extra house they received is the compensation for the extra money they paid, and so there is no "loss" at all, much less a loss attributable to the Defendant's conduct. Damages are designed to make a plaintiff whole, not to put the plaintiff in a better position. Plaintiffs counter that despite the higher cost, the house they purchased is actually less desirable to them. There are at least two problems with this line of argument. First, it is flatly contradicted by the Plaintiff's own testimony: "the house that I have now is lovely, and I love it." (ECF No. 51 at 91.) Second, it raises a matter of subjective taste, not damages, and placing a plaintiff in his or her preferred home is not a remedy the FCRA envisions or could ever achieve.

A plaintiff cannot expect to buy an unsuitable house and then claim the defendant is liable for the "damage" that purchase decision has caused. The premise of Plaintiffs' view, apparently, is that they were forced to buy a house in 2014, and thus had to settle for the less desirable house they ended up in. They state that there are only so many houses on the market, and that "there were no good houses available" at the time. (ECF No. 62 at 3.) But this argument rests on a false choice, the notion that Plaintiffs either had to buy a house or find themselves out on the street. In reality, however, there is no indication that they could not simply have maintained the status quo and

5

continued renting, either in their current rental (by renewing their lease) or somewhere else, and waited to have found a more suitable home. There is, in short, no reason to believe that purchasing a home in 2014 was somehow mandatory or anything other than a decision subjectively preferable to the Plaintiffs. Accordingly, the decision to buy a house they deemed to be not "good" cannot fairly be traced to the conduct of the Defendant. In any event, the fact remains that the additional market value for the house they bought presumably reflects the additional money they paid for it, and so there is no "damage" recoverable under the FCRA.

**2. Transportation Costs**

Plaintiffs also seek to recover the increased transportation costs they are incurring due to the added distance from their son's school. Because the Defendant's conduct caused the need to buy a house other than the one they preferred, they assert they should be able to obtain the difference between their current transportation expenses and the expenses they would have sustained had they closed on the Chantal Drive house.

As noted above, causation is a factual question. In some instances, as with the issue of the more expensive house, the question can be decided at the summary judgment stage. In essence, I have concluded that no reasonable jury could find that the purchase of a materially different kind of house was an injury caused by the Defendant—or that it was "injury" at all. But the increase in transportation costs, under these circumstances, is not so attenuated that no jury could trace the expenses to the Defendant's conduct. It is true that there are many factors involved in the decision to purchase a house: whether to purchase, when, where, and how much to spend. A jury might very reasonably find that the decision to purchase a home farther away from school cuts the causal chain between the erroneous credit report and the damages. As the Defendant points out, surely a plaintiff

could not buy a house a hundred miles away and then seek to recover, just as a plaintiff could not enroll a child in an expensive private school near the new house and then send the bill to the credit reporting agency defendant. Those decisions are so idiosyncratic that they break the chain of causation. But a jury conceivably could also find that the Plaintiff's decision was quite reasonable and that the Defendant's conduct was a substantial factor in giving rise to the increased transportation costs. Accordingly, summary judgment cannot be granted on that question.

**3. Emotional Distress**

Finally, Plaintiffs seek to recover damages for emotional distress. Plaintiff Carmen Martinez had previously suffered from depression, and the circumstances caused by the erroneous credit report allegedly exacerbated her symptoms. In the Seventh Circuit, there is "a strict standard for a finding of emotional damage because this type of harm is "so easy to manufacture." *Aiello v. Providian Fin. Corp.,* 239 F.3d 876, 880 (7th Cir. 2001).

Here, the record establishes that Plaintiff Carmen Martinez had been treated for depression since 2007. There is at least some evidence that her medication, Cymbalta, had been increased from 30 mg to 60 mg following the credit incident. (ECF No. 51-1 at 80.) And she testified that on Thanksgiving, she got depressed because she had envisioned cooking Thanksgiving dinner in the Chantal Drive house. (*Id.* at 91.) Although not particularly compelling, this evidence is not so flimsy that no jury could reasonably find in the Plaintiffs' favor.

**III. Conclusion**

For the reasons given above, I conclude that Plaintiff could establish damages resulting from emotional distress and increased borrowing costs. Accordingly, the motion for summary judgment is **DENIED**.

**SO ORDERED** this 26th day of January, 2015.

 /s William C. Griesbach
William C. Griesbach
United States District Judge